NO. 07-08-0363-CR
NO. 07-08-0364-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 4, 2009
_____

DONALD ELIJAH MATTHEWS, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NOS. 57,858-A & 57,859-A; HON. HAL MINER, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant Donald Elijah Matthews, Jr. was convicted of violating a protective order and committing arson. He contends that the evidence is both legally and factually insufficient to sustain those convictions. We disagree and affirm the judgments.

*Standard of Review*

The applicable standards of review are explained in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) and their progeny. We refer the parties to those cases.

*Violation of a Protective Order*

Appellant was initially charged with intentionally or knowingly violating the terms of a protective order issued under Chapter 85 of the Texas Family Code. The violation occurred, according to the indictment, through his intentionally or knowingly committing family violence against Lakesha Matthews (his wife) by assaulting her on or about May 10, 2008. According to appellant, the act in which he engaged on May 10, 2008, was too vague to constitute an assault. That act involved his threatening to "get" Lakesha. The utterance was made through the window of his car as he drove it next to hers early that morning.

According to the record, the protective order was issued in March of 2008 and remained effective until March of 2009. Between the date of its issuance and through May 10, 2008, appellant had not only told Lakesha that he was going to "get" her, he had also rammed his car into hers on May 6, 2008, while she was driving it. So too had he entered Lakesha's car in April of 2008, bit her finger, made it bleed, and sat on her as he drove the vehicle across a park. Each of those instances happened after the issuance of the protective order and on or before May 10, 2008. And, because the indictment was not written in such a way as to restrict the assault to any one of those events, the record contains more than some evidence illustrating that appellant assaulted Lakesha on or before May 10, 2008, in violation of the protective order.[1] And, the jury's verdict to that effect is supported by more than weak evidence, is not contradicted by the great weight of

[1]The State did not specify the manner of assault in its indictment. Yet, one can occur when a person intentionally or knowingly causes bodily injury to another, threatens another with imminent bodily injury, or causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive. TEX. PENAL CODE ANN. §22.01(a)(2) (Vernon Supp. 2009). And, so long as the evidence shows the commission of an assault within the limitations period and prior to issuance of the indictment, that assault will support the conviction. *Ketchum v. State,* 199 S.W.3d 581, 589 (Tex. App.– Corpus Christi 2006, pet. ref'd).

the evidence, and is manifestly just. Because the conviction is supported by both legally and factually sufficient evidence, we overrule the issue.

*Arson*

Next, appellant attacks the sufficiency of the evidence to prove he committed arson. That is, he does not contest the evidence of a fire being started in a rear bedroom of the house. He simply suggests that the evidence fails to show that he started it. He believes this to be so since the testimony uttered by the only witness that saw him both contradicted that of the fire investigator and came from someone who disliked him. We overrule this issue as well.

The witness in question was Lakesha's daughter, who happened to be appellant's step-child. She testified to seeing appellant return to the house on the morning of May 10, 2008, after he said he would "get" Lakesha, hearing breaking glass, seeing some cloth-like material that was ablaze enter the rear bedroom through the window, seeing appellant at the rear window of the bedroom in which the fire started, and then seeing him run out of the back yard. Admittedly, portions of her testimony about what in the bedroom first ignited differed from that of the fire investigator who testified. So too did the investigator indicate that he believed the rear bedroom window was intact during the blaze. Yet, neither of those matters dealt with the identity of who started the fire. That is, the fire chief's testimony did not indicate that someone other than appellant started it. Moreover, pictures of the rear window actually suggest that it was broken since all that remained was a burned, framed opening without glass.

As for the likelihood that the witness disliked appellant, that matter simply created credibility issues, as did the purported contradictions mentioned above. And, since it fell

3

to the jury to weigh and resolve them, it could choose whether to believe the step-child when she identified appellant as the one who set the fire. *See Lancon v. State,* 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating that it falls within the province of the jury to resolve credibility issues). Finally, the step-child's testimony, if believed by the fact finder, was more than sufficient for a rational trier of fact to believe beyond a reasonable doubt that appellant started the fire with intent to destroy or damage the habitation. *See* TEX. PENAL CODE ANN. §28.02(a)(2)(A) (Vernon Supp. 2009) (stating that a person commits arson if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage a habitation knowing that it was within the limits of an incorporated city or town). And, we cannot say that any contradictions in the evidence regarding tangential issues, the witness' supposed bias, or even testimony from appellant's mother suggesting that appellant was home undermines in any way our confidence in the verdict.

Accordingly, the judgments of the trial court are affirmed.


Brian Quinn
Chief Justice


Do not publish.